UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BREIUN VICHA FOLSE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-9624** |
| **DY. ROBERT KNIGHT, WARDEN CANTRELLE DAVIS, SHERIFF CRAIG WEBRE** | **SECTION "S"(4)** |

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On February 6, 2017, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participated by telephone.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I.   Factual and Procedural Background

The plaintiff, Brieun Vicha Folse ("Folse") is an inmate currently incarcerated at the Concordia Parish Correctional Facility in Ferriday, Louisiana.[3] He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against defendants, Lafourche Parish Sheriff's Deputy Robert Knight, Warden Cantrelle Davis of the Lafouche Parish Detention Center, and

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims. The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 13. The hearing was digitally recorded.

[3] Rec. Doc. No. 4.

former Lafourche Parish Sheriff Craig Webre seeking damages for the alleged violations of his constitutional rights.

### A. The Complaint

In his complaint, Folse alleged that in April of 2017, while he was housed in the Lafourche Parish Correctional Center, Deputy Robert Knight entered the vestibule and grabbed and massaged Folse's penis. Folse referenced and attached a copy of his August 17, 2017, Administrative Remedy Procedure ("ARP") grievance form from the Lafourche Parish Detention Center. On this form, Folse asserted that he was in the vestibule to obtain pages to color when Deputy Knight inappropriately touched him by grabbing his penis. As relief, Folse requested that Deputy Knight be fired and that he be awarded damages and money for his mental and physical stress.

### B. The *Spears* Hearing

At the hearing, Folse testified that he is a convicted inmate serving a 10-year prison sentence for being a felon in possession of a firearm. He stated that he will be eligible for parole in 2020.

Folse also stated that, at the time of the alleged incident, he was a Trustee inmate at the Lafourche Parish Correctional Center. He further testified that, sometime around April 23 to 25, 2017, he entered "the booth" area to retrieve some coloring pages when Deputy Knight[4] suddenly grabbed his penis. Folse stated that, after the incident, he spoke to Deputy Hare and asked what he could do about the incident, but received no advice. He also later spoke with Sergeant Jeff Chamberlain about the incident, but he was still given no instructions.

---

[4] During the hearing, Folse referred to him as Sergeant Knight. For consistency, the Court will continued to refer to the defendant as Deputy Knight.

Folse indicated that at some point, he learned that Deputy Knight told others that he had heard that Folse had a "shank" on him. Folse claims that, after the incident, he was taken off of Trustee status and shipped to the Catahoula Parish Jail.

Folse testified that he documented in a black journal everything that occurred with respect to the incident with Deputy Knight. Before he was transferred, sometime between April 23 and 25, 2017, his journal was taken away from him. Folse recalled losing his Trustee status on a Thursday and being transferred to the other jail on a Sunday.

Folse testified that, on May 14, 2017, he was sent back to the Lafourche Parish Correctional Center for about one week. During that time, he learned that Deputy Knight had been "written up" for other incidents of sexually touching inmates. Folse claimed that he complained to Deputy Harris that his allegations against Deputy Knight had not been investigated. Soon after this, he was transferred several times between the Lafourche Parish Correctional Center and the Catahoula Parish Correctional Center because of pending criminal proceedings. While in Lafourche Parish on June 21, 2017, Sergeant Jeff Chamberlain approached him to take his statement regarding the incident with Deputy Knight. Folse stated that Sergeant Chamberlain allowed him to be placed back on Trustee status.

Folse testified that he remained on Trustee status in Lafourche Parish until his transfer out on August 9, 2017. He stated that during that time, he drafted an administrative grievance about his allegations against Deputy Knight. Folse claims that after the first step of the administrative process, the prison officials told him the incident was under investigation. He stated that he received no follow-up decisions or information on how to proceed to the second step because he was shipped back to Catahoula Parish.

Folse further testified that he named Warden Davis and Sheriff Webre as defendants because he felt they failed to assure that steps were taken to investigate the incident with Deputy Knight. Folse stated that he repeatedly wrote to Warden Davis to inform the Warden about the incident, but he did not receive any response. Folse indicated that he felt that Warden Davis knew of the incident, but failed to talk to him about it or look into the situation. Folse also stated that he felt that Sheriff Webre did not take the right steps to check into the situation. Folse conceded, however, that Sheriff Webre may not have known about the incident since he rarely was at the jail.

Folse also testified that he wanted something done to prevent Deputy Knight from attacking others and to be awarded monetary relief.

## II.  Standard of Frivolousness Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly

4

baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.    Analysis**

    **A.    Claim Against Deputy Robert Knight**

Folse alleges that Deputy Knight violated his constitutional rights when he inappropriately grabbed and massaged Knight's penis through his clothing. Folse claims that he simply was present in the vestibule getting coloring paper when the incident occurred.

The Fifth Circuit has recognized that prisoners have a constitutional right to some level of bodily privacy, but this right is "minimal at best" and "necessarily sacrificed to legitimate penological needs." *Tuft v. Texas*, 410 F. App'x 770, 776 (5th Cir. 2011) (citing *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002) & *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir. 1994)). Among those rights protected by the Eighth Amendment are the prisoner's right to be free from sexual assaults by prison officials. *Copeland v. Nunan*, 250 F.3d 743, 2001 WL 274738, at *3 (5th Cir. Feb. 21, 2001) (Table, Text in Westlaw) (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)).

In addressing sexual assaults in prisons, the Fifth Circuit has applied the long-standing rule that, to recover under the Eighth Amendment, the prisoner must demonstrate more than a *de minimis* injury, that the prison official acted with deliberate indifference, and the conduct was repugnant to the conscience of mankind. *See Copeland*, 2001 WL 274738, at *3; *see also*, *Allen*

5

*v. Johnson*, 66 F. App'x 525, 2003 WL 21017401, at * 1 (5th Cir. Apr. 15, 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 833-34 & 847 (1994) & *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)). The Fifth Circuit has reitereated, however, that while isolated and unwanted sexual touchings by prison employees are "despicable", they "'do not involve a harm of federal constitutional proportions as defined by the Supreme Court.'" *Pryer v. Walker*, 385 F. App'x 417, 418 (5th Cir. 2010) (citing *Boddie v. Schneider*, 105 F.3d 857, 860-61 (2d Cir. 1997)); *Copeland*, 2001 WL 274738, at *3 (citing *Hudson*, 503 U.S. at 9-10 & *Boddie*, 105 F.3d at 860-61); *see also*, *Allen*, 2003 WL 21017401, at *1.

In more recent years, during which the Fifth Circuit has not directly addressed the issue of unwanted sexual touching by prison guards, the United States Supreme Court has revisited the *Hudson* need for more than a "*de minimis*" injury in the context of cruel and unusual punishment under the Eighth Amendment. The Supreme Court has held that "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (quoting *Hudson*, 503 U.S. at 4). The Supreme Court reiterated that the Eighth Amendment's protection "excludes" *de minimis* injuries only if the cruel and unusual punishment "is not of a sort repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 37-38 (quoting *Hudson*, 503 U.S. at 9-10). The Court held that what is deemed repugnant is tested by what actions have become "incompatible with the evolving standards of decency that mark the progress of a maturing society…" *Hudson*, 503 U.S. at 10-11.

The federal courts also recognize another exception to the Eighth Amendment's prohibition against unwanted touching when the contact serves a legitimate penological purpose. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979). The courts have long resolved that even unwanted contact incidental to legitimate official duties, such as a justifiable search, are not prohibited by the Eighth

6

Amendment, unless they were performed to gratify or arouse the officer or humiliate the inmate. *See Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *see also*, *Hudson*, 503 U.S. at 6-8. "[E]ven an officer who is meticulous in conducting a search does not violate an inmate's constitutional rights as long as the officer had no intention of humiliating the inmate or deriving sexual arousal or gratification from the contact." *Crawford v. Cuomo*, 796 F.3d 252, 258 (2d Cir. 2015).

Numerous federal courts have considered and held that only "severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." *Boddie,* 105 F.3d at 861-62. Many courts in the Fifth Circuit, most relying on the Second Circuit's opinion in *Boddie* and/or the related Fifth Circuit opinions cited *supra.*, have repeatedly held that single and isolated acts of sexual touching were not sufficient to state a claim under the Eighth Amendment. *See*, *e.g.*, *Copeland*, 2001 WL 274738, at *3; *Parker v. Gusman*, No. 2018 WL 279628, at 3-4 (Jan. 2, 2016); *see also*, *Joseph v. Jackson Parish Correctional Center*, No. 17-1636, 2018 WL 2033707, at *2 (W.D. La. Apr. 10, 2018), *adopted*, 2018 WL 2033299, at *1 (W.D. La. May 1, 2018); *Legarde [sic] v. Metz*, No. 13-805, 2015 WL 3648628, at *2 (M.D. La. Jun. 10, 2015); *Ben v. Brinks*, No. 13-023, 2014 WL 931796, at *2 (W.D. Tex. Feb. 13, 2014), *adopted*, 2014 WL 931432, at *1 (W.D. Tex. Mar. 10, 2014); *Wright v. Thompson*, No. 09-1544, 2010 WL 3282955, at *1-2, 4 (W.D. La. Jun. 30, 2010), *adopted*, 2010 WL 3282957, at *1 (W.D. La. Aug. 17, 2010); *Washington v. City of Shreveport*, No. 03-2057, 2006 WL 1778756, at *2, 6 (W.D. La. Jun. 26, 2006).

In questioning this pattern of excluding solitary and isolated incidents from scrutiny, the Second Circuit revisited its holding in *Boddie* in *Crawford*, *supra.*, 796 F.3d at 252. In *Crawford*, the Second Circuit addressed the viability of two inmates' claims about separate acts of sexual touching by the same prison guard, noting that the guard had at least 20 grievances filed by inmates

against him for sexual abuse or harassment.  The *Crawford* Court clarified that it never intended for the *Boddie* opinion to prevent review of single or isolated incidents of sexual abuse.  The Court reiterated its resolve that "a single incident of sexual abuse, if sufficiently severe or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." *Crawford*, 796 F.3d at 257.  The Court further held that, "an inmate need not allege that there was penetration, physical injury, or direct contact with uncovered genitalia.  A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Id*.

In deeming the defendant's isolated actions against the plaintiffs to be repugnant and violative of the Eighth Amendment, the Second Circuit also addressed the impact of the "the contemporary standards of decency" through changing laws around the country and "the deep moral indignation … [over] the problem of sexual abuse in prisons," in the years after *Boddie* was decided.  In doing so, the Second Circuit concluded as follows:

> In light of this evolution, while the standard articulated in *Boddie* remains the same, "its applicability must change as the basic mores of society change." *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008) (quoting *Furman v. Georgia*, 408 U.S. 238, 382 (1972) (Burger, C.J., dissenting)). Accordingly, conduct that might not have been seen to rise to the severity of an Eighth Amendment violation 18 years ago may now violate community standards of decency, and for that reason, we believe that the officer's conduct in *Boddie* would flunk its own test today.

*Crawford*, 796 F.3d at 260.

To emphasize the changing current in the Fifth Circuit, the Court need only look to the evolution between two opinions addressing the same sexual abuse claims brought by Louisiana inmate Felton Lagarde against a prison guard.  In 2015, the United States District Court for the Middle District of Louisiana considered a motion for summary judgment filed by the plaintiff Lagarde which addressed *inter alia* his claim that the prison guard had attempted to force him to

8

have oral sex, attempted to force a broom down his pants and between his exposed buttox, and then beat him when he refused the advances. *Legarde [sic]*, 2015 WL 3648628, at *1. The District Court denied Lagarde's motion based on the *Boddie* analysis finding that the isolated "conduct [was] deplorable," but insufficient to state a constitutional violation, "[b]ecause only severe or repetitive sexually harassing behavior or abuse" could violate the Eighth Amendment. *Id*., at *2.

Just two years later, following a bench trial, the same judge, now citing *Crawford* and similar cases, held that the isolated incident of sexual abuse to be severe and "unjustified conduct proven at trial [to be] unquestionably 'repugnant to the conscience of mankind' and therefore violate[ed] the Eighth Amendment." *Lagarde v. Metz*, No. 13-805, 2017 WL 457654, at *3 (M.D. La. Feb. 2, 2017). The Court found no evidence of a penological purpose for the attack and cited this Court for the proposition that "the evolving standards of decency demonstrate 'a national consensus that any sexual assault of a prisoner by a prison employee constitutes cruel and unusual punishment.'" *Id*., at *4 (quoting *Authement v. Parish of Terrebonne*, No. 09-4618, 2010 WL 5093866, at *6 (E.D. La. Dec. 8, 2010) (Roby, M.J.)).

In the instant case, Folse has alleged that Deputy Knight's actions were not justified or made for any known and announced penological reasons. While Folse indicates he eventually was told by a third party that Knight later claimed that he touched Folse's penis looking for a "shank," Knight denies in his pleadings and statements that any such legitimate reason existed. Rather, he testified that he was looking for coloring pages when Deputy Knight grabbed and massaged his penis. Even this alleged unwarranted, intentional single act of contact with Folse's genitalia, without a sufficient penological purpose, at least states a non-frivolous claim under the Eighth Amendment sufficient to survive this initial review. *Crawford*, 796 F.3d at 257.

For these reasons, the Court recommends that Folse's § 1983 claim under the Eighth Amendment against Deputy Robert Knight be allowed to proceed further.

**B.     Claims Against the Supervisory Officials**

Folse alleges that Warden Davis and Sheriff Webre should be held liable for failing to take any action to address the alleged incident with Deputy Knight and be held responsible for what takes place in the prison. He also alleges that he wrote to Warden Davis several times and received no response. He conceded, however, that Sheriff Webre was rarely present at the prison and likely did not know what was going on within the prison.

A supervisory official, such as the Warden and the Sheriff, may not be held liable pursuant to §1983 under any theory of *respondeat superior* for the actions of subordinates that may have violated a plaintiff's constitutional rights. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987); *See also Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). A supervisory official would only be liable under § 1983 if he was personally involved in the alleged constitutional deprivation or there existed a sufficient causal connection between the supervisor's conduct and the alleged constitutional violation by the subordinate. *Thompkins*, 828 F.2d at 303. Furthermore, the Supreme Court has clarified that the term supervisory liability in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

In this case, Folse does not provide any allegations at all that would establish that either Warden Davis or Sheriff Webre were personally involved in or connected to the incident to state a non-frivolous claim under § 1983. Folse has presented nothing to suggest that Sheriff Webre was aware of the incident or had any involvement in the incident or the subsequent investigation

10

or grievance process. He therefore has failed to allege a constitutional violation or any basis of liability against Sheriff Webre as supervisory official.

His only assertion against Warden Davis is that he allegedly sent letters to the Warden that went unanswered. However, it is well settled that the typical duties of a prison warden do not require the intervention into every letter received from a prisoner. *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 1994); *McIntyre v. Rupert*, No. 2013 WL 6212709, at *6 (E.D. Tex. Nov. 27, 2013) (warden was not liable under § 1983 "just because he was the warden or because the plaintiff wrote to him.") Similarly, a prisoner has no constitutional right to receive a response or even an investigation into a grievance. *See Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). The Supreme Court has declared that a supervisory official is not liable merely because they learned about the incident or even acquiesced after the fact in their subordinate's misconduct. *Iqbal*, 556 U.S. at 677; *Sterns v. Epps*, 464 F. App'x. 388, 393 (5th Cir. 2012). For these reasons, Folse has failed to state a non-frivolous claim against Warden Davis.

The Court notes that supervisory liability may still exist, however, even without "overt personal participation in [an] offensive act if supervisory officials implement a policy so deficient that the policy itself is repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304; *see*, *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010); *Terry v. LeBlanc*, 479, F. App'x 644, 646 (5th Cir. 2012). Folse was able to file a grievance complaint and give a statement to Seargent Chamberlain who initiated an investigation into the incident with Deputy Knight. Folse has not made any allegations of any unconstitutional policy implemented by the Sheriff or Warden that prevented the investigation or that was the moving force behind the alleged assaultive behavior by Deputy Knight. He therefore has failed to allege a basis for supervisory liability based on policy considerations.

Folse's §1983 claims against Warden Davis and Sheriff Webre are frivolous and otherwise fail to state a claim for which relief can be granted and should be dismissed in accordance with 28 U.S.C. § 1915(e), § 1915A, and as applicable, 42 U.S.C. § 1997e.

## IV. Recommendation

It is therefore **RECOMMENDED** that Folse's §1983 claims against Warden Cantrelle Davis and Sheriff Craig Webre be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §1915(e), §1915A and 42 U.S.C. §1997e.

It is further **RECOMMENDED** that Folse's § 1983 claims against Deputy Robert Knight for cruel and unusual punishment under the Eighth Amendment arising from the alleged sexual touching be allowed to proceed and remain referred to the undersigned Magistrate Judge for further pretrial proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 11th day of June, 2018.

KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[5] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.